IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>Plaintiff,<br>v.<br><br>BOARD OF SUPERVISORS OF ARLINGTON COUNTY, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 1:11-cv-1394<br>) AJT/TRJ<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

This matter is before the Court on defendants' Motion to Dismiss (the "Motion"). Plaintiff, Federal Deposit Insurance Corporation ("FDIC"), filed suit seeking a refund for property taxes paid to Arlington County, Virginia.  FDIC named as defendants the Board of Supervisors of Arlington County, Arlington County Department of Real Estate Assessments ("DREA"), and Thomas Rice, the Director of DREA.[1]  For reasons stated herein, the Motion to Dismiss is granted in part and denied in part.

I.

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]  In that regard, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint

---

[1] FDIC's Complaint also named Frank O'Leary, the Treasurer of Arlington County, as a defendant but voluntarily dismissed O'Leary pursuant to Federal Rule of Civil Procedure 41(a). [Doc. Nos. 12 and 13]

[2] The defendants have also moved to dismiss under Rule 12(b)(1).

as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  For that reason, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 555 U.S. at 556.  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555.  A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal brackets and quotations omitted).

## II.

The facts and claims in this case are straightforward; the manner in which FDIC seeks to vindicate those claims is another matter.  FDIC owns property at two addresses in Arlington County in its corporate capacity.  Unlike many federal entities, FDIC is subject to local taxes on its real property. *See* 12 U.S.C. § 1825(a).  In that regard, FDIC's property subject to Arlington taxes consists of both commercial and residential components.  The residential property is a non-public facility primarily utilized for housing individuals attending conferences and training at FDIC headquarters.  In 2008, 2009, 2010, and 2011, Arlington County classified this residential property as a "hotel," which had the effect of increasing FDIC's tax liabilities over what they would have been had the property not been classified as a hotel.  FDIC paid its tax bill for those four years under protest.

By statute, Virginia law prescribes a cause of action for a disgruntled taxpayer to contest the assessment of real estate taxes, together with a specific state court venue for that challenge.

2

*See* Va. Code § 15.2-717. FDIC contends that the hotel classification was erroneous under Virginia law.[3] However, rather than comply with Virginia's statutorily prescribed method for challenging Arlington County's tax assessment, it has filed a two-count complaint in this Court that seeks (1) a Declaratory Judgment that Arlington County's assessment is contrary to the provisions of the Constitution of Virginia and Va. Code § 58.1-3201 (Count I); and (2) a refund based upon a claim for "General Assumpsit/Breach of Quasi-Contract/Unjust Enrichment" (Count II).

Arlington has filed a Motion to Dismiss the complaint in its entirety on the grounds that this action is barred by the Tax Injunction Act. Arlington also makes several arguments in the alternative. As to Count I, Arlington urges this Court to exercise its discretion under the Declaratory Judgment Act and decline jurisdiction. As to Count II, Arlington claims that FDIC cannot proceed on a common law theory of recovery for tax payments. Finally, Arlington also argues that, if the Court retains jurisdiction over the action, defendants DREA and Thomas Rice should, at the very least, be dismissed. For the reasons stated herein, the Court will decline to exercise jurisdiction with respect to Count I seeking a declaration of rights, permit, at this stage, Count II to proceed, and dismiss defendants DREA and Mr. Rice.

### A. The Tax Injunction Act

The Tax Injunction Act ("TIA") states that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA was

---

[3] FDIC also contends that Arlington incorrectly calculated the amount of square footage of leasable area it owns and "may have made additional errors in assessing the Property, which may have contributed further to the erroneous assessments in 2008, 2009, 2010, and 2011." Compl. ¶¶ 18-19. FDIC has not delineated, however, what those errors may have been. FDIC made clear at the hearing, however, that it is primarily concerned with its classification as a hotel.

enacted to prevent individuals from using a federal court to interfere with the quintessentially sovereign act of taxing: "The power to tax is basic to the power of the State to exist." *Arkansas v. Farm Credit Servs. of Central Ark.*, 520 U.S. 821, 826-27 (1997) (citing *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444 (1940)). The TIA, however, does not apply to the United States or its "federal instrumentalities." *See id.* at 823-24 ("The statute does not constrain the power of federal courts if the United States sues to protect itself or its instrumentalities from state taxation.") (citing *Dep't of Employment v. United States*, 385 U.S. 355, 358 (1966)). This "federal instrumentalities" exception recognizes that the federal government has sovereign interests of its own and is not restricted by its own enactments, such as the TIA, unless such legislation indicates a clear intent otherwise. *Id.* at 827. For these reasons, the federal government or one of its instrumentalities can sue a state, or a subdivision thereof, when seeking to bar imposition of an unlawful tax. The initial issue in this case reduces to whether the FDIC is a "federal instrumentality."

There is no bright line test to apply in order to determine whether the FDIC is a federal instrumentality. *See id.* at 830-31 (discussing the various tests that the courts of appeals have applied without expressly adopting one). We do know, however, that "the mere fact that a party challenging the tax has interests closely related to those of the Federal Government is not enough." *Id.* at 828 (discussing *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 471-72 (1976)).[4] We also know that "each instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." *Arkansas*,

---

[4] In *Moe*, the Court assumed that the plaintiff Indian tribes were asserting interests closely aligned with those of the Federal Government, and found that insufficient by itself to afford them TIA federal instrumentality status. *See Arkansas*, 520 U.S. at 828. Instead, the Court "went on to find the tribes exempt from [the TIA] only because a second federal statute granted sweeping federal-court jurisdiction where an Indian tribe was a party." *Id.* (citing *Moe*, 425 U.S. at 472).

520 U.S. at 830 (citing with approval *Federal Reserve Bank of Boston v. Comm'r of Corps. and Taxation of Mass.*, 499 F.2d 60 (1st Cir. 1974)). The Supreme Court has also identified several factors it found to be pertinent to the analysis, including, among others, (1) whether Congress chartered the entity, (2) whether the entity is subject to governmental supervision, (3) whether the President appointed the entity's officers, (4) whether the entity is involved in implementing federal policy, (5) whether the entity receives material assistance from the Federal Government, (6) whether the entity's employees are private or considered employees of the federal government, and (7) whether the entity is exempt from state taxes. *Dep't of Employment*, 385 U.S. at 358-61.[5]

Several circuits have addressed the question of whether FDIC is a federal instrumentality, though with differing conclusions. Some courts have focused on whether the FDIC was exercising what would be a governmental function or acted on behalf of a private entity as a receiver, one of its statutorily authorized functions. *See, e.g. Bank of New England Old Colony N.A. v. Clark*, 986 F.2d 600, 602-03 (1st Cir. 1993) (holding that FDIC was not an instrumentality of the United States for purposes of the TIA because FDIC's role as a receiver of a private bank in a tax refund action was a minimally related to the federal government); *see also FDIC v. New York*, 928 F.2d 56, 59-60 (2d Cir. 1991) (holding that FDIC was not entitled to federal instrumentality status because "FDIC was attempting to protect commercial lending institutions rather than the federal government[,]" the tax against the bank had "at most a *de*

---

[5] The United States joined as a co-plaintiff in *Department of Employment*, a fact that the Supreme Court deemed important to point out later in *Arkansas. See Arkansas*, 520 U.S. at 827-28 (explaining out that, before *Arkansas*, the Supreme Court had never before considered whether an entity fell under the federal instrumentalities exception when that entity sued without the United States as a co-plaintiff). However, nothing in *Arkansas* indicates that the factors discussed in *Department of Employment* were to be confined to cases where the United States was a co-plaintiff. Quite the contrary, the Court in *Arkansas* placed importance on examining the entity "in light of its governmental role." *Id.* at 830 (quoting *Bank of Boston*, 499 F.2d at 64).

*minimis* effect on the federal government[,]" and the FDIC's "financial interest in the [bank']s refunds would be minimal and wholly derivative of the [bank's] rights."). Significant to courts in these receivership cases is that a private entity, and its creditors or depositors, not the FDIC generally or the federal government, would receive the benefits of any refunded taxes. But the Third and Fifth Circuits have come out the other way in cases where the FDIC was also operating as a receiver. *See Simon v. Cebrick*, 53 F.3d 17, 23 (3rd Cir. 1995) (holding that FDIC is acting in a governmental capacity when it winds up the affairs of failed banking institutions); *FDIC v. New Iberia*, 921 F.2d 610, 613 (5th Cir. 1991) (declaring, without much analysis, that it "may hardly be doubted" that the FDIC is an agency exempt from the TIA). Central to the Fifth Circuit's holding was that federal jurisdiction over FDIC cases had been broadly authorized. *Id.* Where the FDIC is acting other than in its capacity as a receiver, courts have assessed the extent to which the FDIC acts as a regulator or exhibits other indicia of a governmental actor. *See e.g., FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004) (explaining that "FDIC-Corporate acts as guardian of the public fisc, disburses proceeds from the insurance fund, and having paid insurance claims is subrogated to rights of the bank's depositors against the failed institution . . . . FDIC-Corporate also holds the right to prosecute claims against the failed bank's officers and owners."). While the Fourth Circuit has acknowledged that FDIC can operate, depending on the circumstances, as either a receiver for failed banks or in its corporate capacity, it has not ruled on whether the FDIC acts as a federal instrumentality in situations comparable to those presented here. *See FDIC v. Godshall*, 558 F.2d 220, 222-23 (4th Cir. 1977).

Based on the considerations the Supreme Court set forth in *Department of Employment* and *Arkansas*, as well as those in the courts of appeals, the Court concludes that the FDIC should be considered a federal instrumentality in this case for the purposes of the TIA. First, FDIC is

6

challenging a tax that has been levied directly against it based on property that it owns; it is not

suing in its capacity as a receiver or effectively standing in the shoes of a failed bank. The

outcome of this suit will not primarily benefit or affect the rights of private individuals; instead,

it will directly affect FDIC and its insurance fund. More generally, the FDIC possesses powers

and attributes comparable to those of a government agency. Congress created the FDIC, and it

exercises certain regulatory functions with respect to certain financial institutions beyond merely

providing deposit insurance for the benefit of depositors. *See, e.g.,* 12 U.S.C. §§ 1811(a),

1831e(f). It is also exempt from all state taxes, save the tax at issue in this case. 12 U.S.C. §

1825. The Board of Directors is comprised of the Comptroller of the Currency, the Director of

the Consumer Financial Protection Bureau, and three others who are appointed by the President

with the advice and consent of the Senate. 12 U.S.C. § 1812(a)(1). And it must submit annual

reports on its "operations, activities, budget, receipts, and expenditures" to the President and

Congress, and is subject to audits by the Comptroller General. 12 U.S.C. §§ 1827(a)(2),

1833c(a). It has been given plenary access to federal courts; and by statute, claims involving the

FDIC are considered to arise under federal law. 12 U.S.C §§ 1819(b)(1), (b)(2). Based on all of

these factors, the Court concludes that the FDIC is a federal instrumentality. It is therefore

exempt from the TIA and this action will not be dismissed based on the TIA.

### B. Count I: Declaratory Judgment Action

FDIC's first count requests a declaratory judgment that it overpaid its taxes in 2008,

2009, 2010, and 2011. The federal Declaratory Judgment Act allows district courts to "declare

the rights and other legal relations of any interested party seeking such declaration, whether or

not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts have discretion in

assessing whether to retain jurisdiction over a declaratory judgment action. *Energy Recovery,*

*Inc. v. Hauge,* 133 F. Supp. 2d 814, 817 (E.D. Va. 2000) (citing *Centennial Life Ins. Co. v.*

*Poston,* 88 F.3d 255, 256 (4th Cir. 1996)); *see also Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.,*

139 F.3d 419, 423 (4th Cir. 1998). A district court should normally entertain a declaratory

judgment action when it finds that the declaratory relief sought "(1) will serve a useful purpose

in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from

the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna,* 139 F.3d at

422 (internal quotations omitted).[6] Pertinent to this inquiry are also considerations of

"federalism, efficiency, and comity" and whether the plaintiff is engaging in "procedural

fencing." *Id.*[7]

Declaratory relief is appropriate, then, when an adjudication will assist the parties going

forward. Traditionally, an adjudication of past conduct does not satisfy the requirements of a

declaratory judgment action. *See Beazer Homes Corp. v. VMIF/Anden Southbridge Venture,*

*L.P.,* 235 F. Supp. 2d 485, 494 (E.D. Va. 2002). District courts do have "the power to hear the

issue of damages after deciding the issue of liability and declaring the parties' rights in an equity

action." *Ins. Servs. v. Aetna Cas. & Sur. Co.,* 966 F.2d 847, 852 (4th Cir. 1992). However, a

---

[6] These are known as the "Quarles" factors. *See Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321 (4th Cir. 1937).

[7] In the context of determining whether a federal court should exercise jurisdiction over a DJA case where there is a parallel state case, considerations of "federalism, efficiency, and comity" require an inquiry into "(i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of overlapping issues of fact or law." *Aetna,* 139 F.3d at 422 (internal quotations omitted). There is no state-court action currently pending; so these factors are irrelevant to the Court's analysis in this case. *Id.* at 423 (holding that "in the absence of a state court proceeding, the criteria outlined in *Quarles,* as well as the considerations of federalism, efficiency, comity, and procedural fencing, continue to be factors which the district court should balance when determining whether to assert jurisdiction over a declaratory judgment action." (internal quotations omitted)).

declaratory judgment action simply is "not an appropriate remedy for past conduct." *Beazer*, 235 F. Supp. 2d. at 494 (quoting *SBA Comms., Inc. v. Zoning Commc'ns of Brookfield*, 96 F. Supp. 2d 139 (D. Conn. 2000)). A case appropriate for declaratory judgment is where "a plaintiff has an objective and reasonable apprehension of *future* litigation, which is of sufficient immediacy and reality, that a declaration of legal rights 'will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Energy Recovery,* 133 F. Supp. 2d at 817 (quoting *Centennial Life*, 88 F.3d at 256-57) (emphasis added).

Here, FDIC has sought merely an adjudication of past conduct—its tax assessments for the past four years. Nowhere in its complaint does the FDIC seek an injunction from future assessments or allege that an adjudication of past assessments would prevent Arlington from improperly assessing taxes in the future. In fact, the Court must conclude that while an adjudication of whether the FDIC ran a "hotel" in 2008-2011 might have an effect on how future taxes were assessed, future assessments will necessarily be based on how FDIC's residential space was used in that applicable year, which may or may not be the same as the years under consideration in this action. Therefore, the Court will grant Arlington's Motion to Dismiss as to the declaratory judgment count.

C. Count II: General Assumpsit/Breach of Quasi-Contract/Unjust Enrichment

FDIC's second count seeks a refund based on the theory that it has a cause of action under federal common law for overpayment of taxes. Arlington argues that FDIC does not have a federal common law right to sue for a refund. The Court has reviewed the cases cited by both parties, and concludes that the FDIC, as a federal instrumentality, has a right of action to recover real estate assessments under federal common law. *See United States v. Wurts*, 303 U.S. 414, 415 (1938) ("The Government by appropriate action can recover funds which its agents have

wrongfully, erroneously, or illegally paid.  No statute is necessary to authorize the United States

to sue in such a case.") (internal citations omitted)). *See also United States v. Dekalb Cnty.*, 729

F.2d 738,741 (11th Cir. 1984) (explaining that the Federal Government has a federal common

law cause of action for overpaid state taxes); *c.f. United States v. California,* 507 U.S. 746, 752

(1993) (assuming that "federal courts may entertain a federal common-law action for the

recovery of state taxes paid by the Government," but rejecting such a cause of action when the

state levied the contested tax on a federal contractor, who the Federal Government later

reimbursed, rather than levying the tax directly on the Federal Government itself).

### D.  Defendants DREA and Mr. Rice

Having found that FDIC has a cognizable cause of action under federal common law, the

Court must determine against which defendants it may proceed.  Along with the Board of

Supervisors of Arlington County, FDIC has included DREA and Thomas Rice, discussed above,

as defendants.  DREA is a division of Arlington County government.  In Virginia, "an operating

division of a government entity cannot be sued unless the legislature has vested the operating

division with the capacity to be sued." *Harrison v. Prince William Cnty. Police Dep't,* 640 F.

Supp. 2d 688, 711 (E.D. Va. 2009); *see also Muniz v. Fairfax Cnty. Police Dep't,* 1:05cv466,

2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) (holding that Fairfax County Police

Department exists as a department of Fairfax County and, therefore, cannot be sued as an entity

in and of itself).  Because DREA is an internal arm of Arlington County and FDIC has not

pointed to a statute vesting DREA with the capacity to be sued, the Court will dismiss FDIC's

complaint as to DREA.

With respect to Mr. Rice, FDIC's complaint alleges only that DREA and Rice "are

responsible for the annual appraisals for ad valorem taxation of all locally assessed real property

10

in Arlington County, Virginia." Compl. ¶ 5.  However, there is no claim that Mr. Rice engaged in conduct that breached his duties or obligations or that he is personally responsible for the refund of any taxes that FDIC has paid based on an erroneous assessment.  He will therefore be dismissed as a defendant under the standard articulated in *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555-57; *Iqbal*, 556 U.S. at 680-81.

III.

For the above reasons, the Court concludes that the FDIC is a federal instrumentality exempt from the Tax Injunction Act.  Nevertheless, the Court declines to exercise its jurisdiction under the Declaratory Judgment Act and will therefore dismiss Count I.  The Court concludes that the FDIC may assert a claim under federal common law for recovery of real estate taxes and will therefore deny Arlington's Motion to Dismiss Count II on those grounds.  The Court will grant defendants' Motion to Dismiss defendants DREA and Rice.

The Court will issue an appropriate Order.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 23, 2012

11